In re WOMAN'S HOSPITAL OF TEXAS, INCORPORATED d/b/a Columbia Woman's Hospital of Texas, Relator.

In re Jeffrey Horswell, M.D., and Jeffrey Horswell, M.D., P.A., Relators.

In re Kenneth Shapiro, M.D., Relator.

In re Pablo S. Rodriguez, M.D., Relator.

In re Fort Worth Osteopathic Hospital, Inc. d/b/a Osteopathic Medical Center of Texas, Relator.

In re Craig W. Barker, M.D., High Plains Radiological Associates, and Muleshoe Area Hospital District d/b/a Muleshoe Area Medical Center, Relators.

In re Southside Family Care Associates, P.A., and Rob Michael Tschauner, M.D., Relators.

In re Riverside Hospital, Inc. d/b/a Northwest regional Hospital, et al., Relators.

In re Derek Farley, D.O., Relator.

In re Sidney Lynn Redels, D.O., Relator.

Nos. 02–0748, 03–0334, 03–0368, 03–0474, 03–0668, 03–0976, 03–0981, 03–1015, 03–1056, 03-1062.

Supreme Court of Texas.

March 5, 2004.

Nicole G. Andrews, John S. Serpe and Richard A. Sheehy, Sheehy Serpe & Ware, P.C., Houston, for Woman's Hospital of Texas Inc. in No. 02-0748.

James R. Tucker, Tucker & Associates, Houston, for Ann Tucker, Steve Tucker and T.T. in No. 02-0748.

David J. White and Hilaree A. Casada, Maria Louise Wormington, Godwin Gruber, LLP, Dallas, for Jeffrey Horswell (M.D., P.A.) in No. 03-0334.

Bill Zook, Ted B. Lyon & Associates, P.C., Mesquite, for Gloria Gaschler, Allan Puls (M.D.), Larry Puls (M.D.), Mary Puls and Estate of Richard J. Puls in No. 03-0334.

David E. Olesky, Cooper & Scully, Dallas, for Colombia Hospital at Medical and Medical City Dallas Hospital in No. 03-0368.

Max E. Freeman II, Max Freeman & Associates, Austin, for Donald Day, M.D. and Robert Pryor, M.D. in No. 03-0368.

J. Frank Kinsel Jr., Cantley & Hanger, P.C., Dallas, for David G. Genecov, M.D., Kevin S. Hopkins, International Craniofacial Ins. and Kenneth E. Salyer, M.D. in No. 03-0368.

J. Frank Kinsel Jr., and Carol J. Traylor, Cantley & Hanger, L.L.P., Fort Worth, for Kenneth Salyer, M.D. Frank Kinsel Jr., for Kenneth E. Salyer, M.D. in No. 03-0368.

Randy A. Nelson and Jason Berent, Thompson, Coe, Cousins & Irons, Dallas, for Pacific Coast Tissue Bank in No. 03-0368.

Randy A. Nelson, Thompson Coe Cousins & Irons, Dallas, for Perfomat Inc. in No. 03-0368.

James Anthony Edwards, Cantley & Hanger, L.L.P., Fort Worth, for The Salyer Group in No. 03-0368.

David Michael Walsh IV, William H. Chamblee and R. Michael Perez, Chamblee & Ryan, P.C., Dallas, for Kenneth Shapiro, M.D. in No. 03-0368.

James J. Juneau, Juneau & Boll, PLLC, Addison, for Donna Wilcox and L.W. in No. 03-0368.

George Alan Boll, Juneau & Boll, PLLC, Addison, and David A. Dorey, Blank Rome LLP, Cherry Hill, NJ, for Timothy Wilcox in No. 03-0368.

Russell J. Bailey, Hinkle Hensley Shanor & Martin, LLP, Amarillo, for Susan Baltz and Grand Medical Clinic, NC in No. 03-0474.

Thomas D. Farris and Rhett J. Hubbard, Peterson Farris Moss Pruitt & Parker, Amarillo, for Pablo Rodriguez in No. 03-0474.

Jack C. Hazlewood, Law Offices of Jack Hazlewood, Amarillo, for Estate of Ruben Grimaldo and Mary Lopez in No. 03-0474.

E. Earl Harcrow, Haynes & Boone, L.L.P., Fort Worth, for Fort Worth Osteopathic Hospital in No. 03-0668.

Gregory Scott Jackson, Karen S. Precella and Ben Mesches, Haynes & Boone, L.L.P., Fort Worth, for Osteopathic Medical Center in No. 03-0668.

John David Hart, Law Offices of John David Hart, Fort Worth, for Teresa Cowan, Rachel Cox, Brenda Glassey, Ambra McKinzie, Charisa McKinzie, David McKinzie, Dennis McKinzie, Estate of Donna McKinzie and Raylene McKinzie in No. 03-0668.

Jim Hund, Hund and Harriger, LLP, Lubbock, R. Brent Cooper and Diana L. Faust, Cooper, Scully, P.C., Dallas, for Craig W. Barker, M.D. in No. 03-0976.

Charles E. Moss, Peterson Farris Doores & Jones, Amarillo, for High Plains Radiological Associates in No. 03-0976.

Benjamin H. Davidson II, McClesky Harriger Brazill & Graf, L.L.P., Lubbock, for Muleshoe Area Hospital District d/b/a Muleshoe Area Medical Center in No. 03-0976.

Joe L. Lovell, Lovell Lovell Newsom & Isern, L.L.P., Amarillo, and Frank J. Battaglia M.D., Houston, for Calvin A. Meissner in No. 03-0976.

Joe L. Lovell, Lovell Lovell Newsom & Isern, L.L.P., Amarillo, for Greta Meissner in No. 03-0976.

Linda C. Breck, Douglas M. Kennedy and Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, for Southside Family Care Associates, P.A. in No. 03-0981.

Linda C. Breck, Brin & Brin, P.C., Corpus Christi, for Rob Michael Tschauner, M.D. in No. 03-0981.

Cage Wavell, Cage Wavell & Associates, Corpus Christi, for Thelma Laverne Jones and Jane Dewitt in No. 03-0981.

William A. Abernethy, Meredith Donnell & Abernethy, P.C., Corpus Christi, for Wallace John Arringdale, M.D. in No. 03-0981.

Paul Gaytan, Steven M. Gonzalez & Associates, Corpus Christi, for Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center and The Heart Hospital in No. 03-0981.

Richard W. Woolsey, Hermansen McKibben Woolsey & Villarreal, L.L.P., Corpus Christi, for Scott William McKinstry, M.D., and Cardiology Associates of Corpus Christi in No. 03-0981.

Diana L. Faust, John A. Scully, Lanette Lurleen Lutich and Ashley Elizabeth Frizzell, Cooper & Scully, PC, Dallas, Melanie Sky Breedlove, Houston, for Riverside Hospital, Inc. in No. 03-1015.

Diana L. Faust, Cooper & Scully, PC, Dallas, for Judith Tavares, R.N., Patricia Sohocki, R.N., Sylvia R. Garcia, L.V.N.,

Thelma T. Vasquez, L.V.N., and Debra Rodriguez, L.V.N. in No. 03-1015.

Randy Howry and Sean E. Breen, Herman Howry & Breen, L.L.P., Austin, for Rejenia Anderson in Nos. 03-1015, 03-1056, 03-1062.

Douglas M. Kennedy, Floyd Wayne Brown Jr., Thomas F. Nye, and Linda C. Breck, Brin & Brin, P.C., Corpus Christi, for Bruce Hoekstra, M.D. in No. 03-1015

Richard W. Woolsey, Hermansen McKibben Woolsey & Villarreal, L.L.P., Corpus Christi, for Derek Farley, D.O. in No. 03-1015.

J. Kevin Oncken, Uzick Oncken Scheuerman & Berger, P.C., San Antonio, for Calallen Minor Emergency Center, P.A., and Sidney Lynn Redels, D.O. in Nos. 03-1015, 03-1056, 03-1062.

Randy Howry, Herman Howry & Breen, L.L.P., Austin, for James Anderson and Jo Blaine Anderson in No. 03-1015.

Carlos Villarreal and Richard W. Woolsey, Hermansen McKibben Woolsey & Villarreal, L.L.P., Corpus Christi, for Derek Farley, D.O. in No. 03-1056.

Randy Howry, Herman Howry & Breen, L.L.P., Austin, for James Anderson, Jo Blaine Anderson and Robert Anderson in No. 03-1056.

Douglas M. Kennedy, Floyd Wayne Brown Jr., Linda C. Breck and Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, for Bruce Hoekstra, M.D. in No. 03-1056.

J. Kevin Oncken, Uzick Oncken Scheuerman & Berger, P.C., San Antonio, for Sidney Lynn Redels, D.O. in No. 03-1056.

John A. Scully, Diana L. Faust, Lanette Lurleen Lutich, Ashley Elizabeth Frizzell,

Cooper & Scully, PC, Dallas, and Melanie Sky Breedlove, Houston, for Riverside Hospital, Inc. d/b/a Northwest Regional Hospital in No. 03-1056.

John A. Scully, Cooper & Scully, P.C., Dallas, for Judith Tavares, R.N. Patricia Sohocki, R.N., Sylvia R. Garcia, L.V.N., Thelma T. Vasquez, L.V.N., Debra Rodriguez, L.V.N. in No. 03-1056.

Douglas M. Kennedy, Linda C. Breck, and Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, for Bruce Hoekstra, M.D. in No. 03-1056.

Melanie Shy Breedlove, Houston, for Patricia Sohocki in No. 03-1056.

Diana L. Faust, Cooper & Scully, PC., Dallas, for Debra Rodriguez in No. 03-1062.

Lanette Lurleen Lutich and Ashley Elizabeth Frizzell, Cooper & Scully, P.C., Dallas, for Riverside Hospital Inc. d/b/a Northwest Regional Hospital in No. 03-1062.

Richard W. Woolsey, Hermansen McKibben Woolsey & Villarreal, L.L.P., Corpus Christi, for Derek Farley in No. 03-1062.

Justice OWEN, joined by Justice HECHT and Justice BRISTER, concurring in part and dissenting in part to the denial of the petitions for writ of mandamus.

Today, the Court has not only the opportunity but I believe the obligation to carry out directives the Legislature gave to the courts of this state in article 4590i of the Revised Civil Statutes, which has recently been repealed and recodified with amendments.[1] Because the Court shirks

---

1. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 (as amended) (former TEX. REV. CIV. STAT. art. 4590i), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws

its responsibilities, I respectfully dissent. I would grant mandamus relief in health care liability cases that remain governed by former article 4590i when an expert report fails to meet the statutory requirements and the trial court has nevertheless refused to comply with governing law that requires dismissal of the case.

## I

More than two decades ago, in 1977, the Texas Legislature concluded that there was a medical malpractice crisis in this state. In response the Legislature enacted the Medical Liability and Insurance Improvement Act, embodied in former article 4590i.[2] By 1995, the Legislature's concerns had not abated but had deepened. As part of its continuing efforts to reduce the cost of health care to Texans and to ensure that health care would be available across the state, the Legislature amended article 4590i to require trial courts to dismiss health care lawsuits unless an expert report that met certain requirements was filed within the first 180 days of the suit, with certain limited provisions for an extension.[3] The obvious intent of this statutory provision was to stop suits that had no merit from proceeding through the courts. The Legislature's

hope was,[4] and is,[5] that this would reduce waste of the parties', the courts', and the insurers' time and money, which would favorably impact the cost of insurance to health care providers and thus the cost and availability of health care to patients.

This Court refuses to give effect to an integral part of the plan the Legislature set forth in former article 4590i for addressing the increased cost and increased unavailability of medical care. The Court refuses to act in spite of:

- the Legislature's conclusion that there is a crisis in Texas; [6]

- the Legislature's express desire that suits be dismissed if at least one expert cannot opine how the health care provider departed from the standard of care and how that departure caused the injury that is the basis for the suit; [7] and

- the Legislature's clear determination that law that applies in other lawsuits is inadequate in some respects for health care liability claims.[8]

The Court will not grant mandamus relief even though that is the only way under former article 4590i to give effect to clearly articulated legislative policy when a trial

847, 884 (current version at TEX. CIV. PRAC. & REM. CODE §§ 74.001 *et seq.*).

2. *Id.*

3. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (former TEX. REV. CIV. STAT. art. 4590i, § 13.01) (repealed 2003).

4. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2039–41 (former TEX. REV. CIV. STAT. art. 4590i, § 1.02) (repealed 2003).

5. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884–85.

6. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2039 (former

TEX. REV. CIV. STAT. art. 4590i, § 1.02) (repealed 2003); *see also* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(a), 2003 Tex. Gen. Laws 847, 884.

7. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (former TEX. REV. CIV. STAT. art. 4590i, § 13.01) (repealed 2003); *see also* TEX. CIV. PRAC. & REM. CODE § 74.351.

8. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2041 (former TEX. REV. CIV. STAT. art. 4590i, § 1.02(b)(7)) (repealed 2003); *see also* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(7), 2003 Tex. Gen. Laws 847, 885.

court will not dismiss a health care liability claim after a claimant fails to file an expert report that meets the statutory requirements.

## II

Just recently, as part of House Bill 4, the Legislature amended section 51.014 of the Texas Civil Practice and Remedies Code to provide for an interlocutory appeal if a trial court refuses to dismiss a health care liability claim when an expert's statement does not meet the statutory standards.[9] This is another unmistakable statement of public policy that the Legislature does not want health care liability cases to proceed through the legal system if the threshold requirement of an expert report has not been met. Although an interlocutory appeal is available only in cases filed on or after September 1, 2003, that is not an indication that the Legislature intended for courts to deny mandamus relief in medical liability cases filed before that date. In fact, it seems more likely that the Legislature intended courts to continue to grant mandamus relief in former article 4590i cases, but that for new cases to which the interlocutory appeal provisions apply, the scope of interlocutory review would be narrowed. This is supported by an examination of the law that existed when the Legislature was crafting the interlocutory appeal provisions in 2003.

Before the enactment of the 2003 amendments that now permit interlocutory appeals, at least two courts of appeals had held that mandamus relief was available in health care liability cases involving challenges to expert reports.[10] In *In re Collom & Carney Clinic Ass'n,* the trial court had found that the expert's statement did not satisfy article 4590i's requirements and that there had been no accident or mistake, but the trial court nevertheless granted an extension of time to file another expert statement.[11] The court of appeals granted mandamus relief, directing the trial court to dismiss the case.[12] The court of appeals concluded that "the dismissal in this case is compelled by statute,"[13] observing that article 4590i "was enacted by the Legislature to address the problem of litigants filing frivolous claims against medical practitioners without adequately investigating them in a timely manner. This led physicians to settle such suits, regardless of their merits, and also to expend sizeable sums defending such claims."[14] The court held that an appeal was inadequate under these circumstances.

Similarly, in *In re Morris,* also decided before the 2003 amendments allowing an interlocutory appeal were passed, the trial court had granted a 30–day extension of time for the claimant to attempt to comply with article 4590i.[15] The court of appeals concluded that mandamus relief would be available in such a case, citing *In re Collom & Carney Clinic Ass'n* and explaining that "[i]n that case, the court held that because the statute expressed a specific purpose of addressing frivolous claims filed against medical practitioners by requiring

9. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.03, 2003 Tex. Gen. Laws 847, 849 (current version at TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9)).

10. *In re Morris,* 93 S.W.3d 388, 390 (Tex. App.-Amarillo 2002, orig. proceeding); *In re Collom & Carney Clinic Ass'n,* 62 S.W.3d 924, 929–30 (Tex.App.-Texarkana 2001, orig. proceeding).

11. *In re Collom & Carney Clinic Ass'n,* 62 S.W.3d at 927.

12. *Id.* at 930.

13. *Id.* at 929.

14. *Id.*

15. *In re Morris,* 93 S.W.3d at 389.

dismissal if a proper expert report was not filed, a remedy by direct appeal was inadequate and mandamus would be available in a proper case." [16]

When the Legislature enacted the right to an interlocutory appeal, no reported decision had held that mandamus relief was unavailable in cases governed by article 4590i. To the contrary, as noted above, at least two reported decisions had expressly said that mandamus relief *was* available, and specifically, that it was available to override a trial court's decision to grant a 30–day extension. When, in 2003, the Legislature enacted an express provision for interlocutory appeals, it specifically directed that an interlocutory appeal could not be taken from a trial court's decision to grant a 30–day extension. [17] It thus seems plausible, even likely, that the Legislature intended to carry forward existing law that allowed appellate courts to direct a trial court to dismiss a health care liability claim when an expert report was lacking or inadequate, but that the Legislature intended to *narrow* existing law in order to eliminate interlocutory review when a trial court granted a 30–day extension.

Granting mandamus relief when there is no expert report that meets former article 4590i's requirements is entirely consistent with decisions of this Court that hold irreversible harm to the public's interest makes a remedy by appeal inadequate. We issued a writ of mandamus in *In re Masonite Corp.* directing the trial court to grant the defendant's motion to transfer

venue. [18] The trial court had recognized that the venues chosen by the plaintiffs in two lawsuits (filed in Jim Hogg and Duval Counties) were improper as to the non-resident plaintiffs, but instead of granting the defendant's motion to transfer to Dallas County, the trial court severed the claims of hundreds of non-resident plaintiffs and transferred those claims to the claimants' sixteen respective counties of residence, none of which was Dallas County. This Court pointed out that we do not normally issue mandamus when a trial court erroneously denies a motion to transfer "even though the trial court has committed reversible error." [19] But we recognized that while "[a]ppeal may be adequate for a particular party, . . . it is no remedy at all for the irreversible waste of judicial and public resources that would be required here if mandamus does not issue." [20] We held that the overlay of the public's interest satisfied the "exceptional circumstances" principle, consistent with *Walker v. Packer.* [21]

We also granted mandamus relief in *CSR Ltd. v. Link,* directing the trial court to grant the defendant's special appearance. [22] We held that "the concerns of judicial efficiency in mass tort litigation combined with the magnitude of the potential risk for mass tort actions against the defendant makes ordinary appeal inadequate." [23] In *Link,* an Australian company had been sued by five plaintiffs, but we recognized that there were potentially thousands of claimants. We said, "Be-

16. *Id.* at 390.

17. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9) (stating "except that an appeal may not be taken from an order granting an extension under Section 74.351").

18. 997 S.W.2d 194, 199 (Tex.1999).

19. *Id.*

20. *Id.* at 198.

21. *Id.* (citing *Walker v. Packer,* 827 S.W.2d 833 (Tex.1992)).

22. 925 S.W.2d 591, 597 (Tex.1996).

23. *Id.*

cause of the size and complexity of the asbestos litigation, the most prudent use of judicial resources in this case is to permit a preliminary resolution of the fundamental issue of personal jurisdiction by writ of mandamus."[24]

In cases governed by former article 4590i, the injury to the public that cannot be remedied by appeal is the adverse impact on the cost and availability of health care to patients in Texas. When suits continue to proceed through the system even though an expert report meeting article 4590i's requirements has not been filed, the costs of those proceedings unalterably add to the overall cost of defending health care claims. This is precisely the evil that the Legislature sought to eliminate when it mandated dismissal as the consequence of the lack of an adequate expert report. Once the costs of continuing to litigate are expended, they irrevocably become part of the burden that the Legislature has determined is impairing the health care system in Texas. Only the intervention of the appellate courts by mandamus relief can supply the remedy when trial courts fail to comply with former article 4590i's command to dismiss claims.

Recognizing the availability of mandamus relief in these cases would also be entirely congruent with the course this Court has taken in arbitration matters.

Twelve years ago, in *Jack B. Anglin Co. v. Tipps*,[25] this Court recognized that there was a disparity in the availability of an interlocutory appeal between cases under the Federal Arbitration Act[26] and those under the Texas Arbitration Act.[27] While both statutory schemes provide for an interlocutory appeal, "federal procedure does not apply in Texas courts, even when Texas courts apply the Federal Act," and an interlocutory appeal under the Texas statute was only available in cases to which the Texas Act applied.[28] In *Tipps*, we called on the Legislature to amend the Texas Act to permit interlocutory appeals when the Federal Act applied.[29] We said that "[s]uch a procedure, already available for orders under the Texas Act, is preferable to reliance on the writ of mandamus."[30] We nevertheless held that mandamus relief is available when the Federal Act applies "to fill this gap in appellate jurisdiction."[31] We also recognized that "[a]bsent mandamus relief, Anglin would be deprived of the benefits of the arbitration clause it contracted for, and the purposes of providing a rapid, inexpensive alternative to traditional litigation would be defeated."[32]

The same parallel exists between cases governed by former article 4590i and those governed by sections 74.351(b) and 51.014(a)(9) of the Texas Civil Practice and

---

24. *Id.* In other special appearance cases, we held that a " 'total and inarguable absence of jurisdiction' justifies extraordinary relief," *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 776 (Tex.1995), and that "comity" and "the risk of harm to interstate and international relations likely to occur if a Texas trial court erroneously exercises jurisdiction over another sovereign" justifies mandamus relief. *K.D.F. v. Rex*, 878 S.W.2d 589, 593 (Tex. 1994).

25. 842 S.W.2d 266, 272 (Tex.1992).

26. 9 U.S.C. § 16.

27. TEX. CIV. PRAC. & REM. CODE § 171.098.

28. *Tipps*, 842 S.W.2d at 272.

29. *Id.* ("[W]e urge the legislature to consider amending the Texas Act to permit interlocutory appeals of orders issued pursuant to the Federal Act.").

30. *Id.*

31. *Id.*

32. *Id.* at 272–73.

Remedies Code.[33] Interlocutory appeal is now expressly available in the latter cases, but not in the former. As discussed earlier, it is not unreasonable to assume that the Legislature intended courts to continue to issue mandamus when necessary in cases governed by former article 4590i. This Court should bridge the "gap in appellate jurisdiction"[34] rather than leave it gaping.

There is no logical basis for leaving this "gap," particularly when the Legislature has said since 1995 that dismissing cases in which the requisite expert report has not been filed is a necessary part of the solution to what the Legislature has termed a crisis in Texas. The statutory mechanism for dismissing health care liability suits is analogous to the "rapid, inexpensive alternative to traditional litigation" that we said arbitration provides, but that would be "defeated" "[a]bsent mandamus relief."[35]

If press accounts of the numbers of health care liability claims filed before the September 1, 2003 effective date of the 2003 amendments are to be believed, the number of cases still governed by former article 4590i is significant.[36] They number in the thousands.[37]

## III

I note that in addition to the decisions in *In re Morris*[38] and *In re Collom & Carney Clinic Ass'n,*[39] other courts of appeals have indicated that mandamus relief is available in cases governed by former article 4590i. In *In re Rodriguez,*[40] the court of appeals discussed *Walker v. Packer,*[41] duly observing that "the cost or delay of having to go through trial and the appellate process does not necessarily make that procedure inadequate."[42] But the court of appeals concluded that the purpose of article 4590i rendered appeal an inadequate remedy:

> To support his contention that he has no adequate remedy at law and is entitled to bring this mandamus proceeding, relator relies upon the reasoning employed by the court in *In re Collom & Carney Clinic Ass'n,* 62 S.W.3d 924

33. TEX. CIV. PRAC. & REM. CODE §§ 51.014(a)(9), 74.351(b).

34. *Tipps,* 842 S.W.2d at 272.

35. *Id.* at 272–73.

36. *See* Rice, *Medical Lawsuits Flood County Courts/Lawyers Rush Before Caps Take Effect,* HOU. CHRON., Sept. 11, 2003, *available at* 2003 WL 57441900 (observing that 1,069 medically related lawsuits were filed in Harris County between House Bill 4's June 1, 2003 enactment and its September 1, 2003 effective date); *Backlog of Malpractice Cases Results from Deadline,* AP WIRE, Sept. 11, 2003 (stating that 3,680 medically related lawsuits were filed in Harris County through the end of August 2003); Council & Robbins, *Mix Up over Bill's Effective Date Causes Run On Courts,* 19 TEX. LAW. 1 (June 9, 2003) (reporting that a large number of cases had been filed in anticipation of House Bill 4's enactment, including 2700 health care liability cases filed in one week in Harris County, 450 cases filed in two days in Dallas County, 400

cases filed in one week in Tarrant County, 210 cases filed in one day in Bexar County, and 100 cases filed in one day in Travis County); Rice, *Rush to Beat Lawsuit Caps All for Naught,* HOU. CHRON., June 3, 2003, *available at* 2003 WL 3264466 (noting that medical liability lawsuit filings increased as much as 200% to 500% in some counties in response to House Bill 4).

37. *Id.*

38. 93 S.W.3d 388, 390 (Tex.App.-Amarillo 2002, orig. proceeding).

39. 62 S.W.3d 924, 929–30 (Tex.App.-Texarkana 2001, orig. proceeding).

40. 99 S.W.3d 825 (Tex.App.-Amarillo 2003, orig. proceeding), *mand. denied,* 47 Tex. Sup. Ct. J. 346 [03–0474] (March 5, 2004).

41. 827 S.W.2d 833, 842 (Tex.1992).

42. *In re Rodriguez,* 99 S.W.3d at 827.

(Tex.App.-Texarkana 2001, no pet.). In that case, the court held that the statute had the specific purpose of eliminating frivolous claims filed against medical practitioners by requiring dismissal if an expert report sufficiently showing the claim was not frivolous was not timely filed. Because of this purpose, the court concluded, a remedy by direct appeal was inadequate and mandamus would be available in a proper case. *Id.* at 929–30. As we did in *In re Olivia Morris, M.D.* [, 93 S.W.3d 388 (Tex.App.-Amarillo 2002, orig. proceeding)], we agree with that decision and the court's reasoning.[43]

Similarly, the court of appeals in *In re Tenet Hospitals Ltd.* held that, when a report omits one of the requirements of article 4590i, there is no adequate remedy by appeal and mandamus should issue dismissing the suit.[44] That decision cited *In re Rodriguez*[45] as well as *In re Collom & Carney Clinic Ass'n*[46] and *In re Morris*.[47]

Two other courts of appeals have reached the merits of mandamus proceedings regarding expert reports in health care liability cases without expressly deciding whether there is an adequate remedy by appeal. The court in *In re Hendrick Medical Center, Inc.* held that the trial court did not abuse its discretion in granting a 30–day grace period, noting "[a]lthough we do not reach the question of whether Relators have an adequate remedy at law, see *In re Collom* ... for a discussion of this requirement for a writ of mandamus."[48] And the court in *In re Barker* noted that "[n]either party disputes that in this type of matter, this court would have jurisdiction to issue a writ of mandamus if it were justified."[49]

Like several of our courts of appeals, I have no difficulty concluding that the purposes of the expert report requirements in former article 4590i can only be served if mandamus relief is available. The 2003 amendments to the Legislature's statutory scheme and the corresponding amendment to section 51.014 of the Texas Civil Practice and Remedies Code do, however, inform my view of when mandamus relief would be available. Section 74.351 of the Texas Civil Practice and Remedies Code contains what was formerly section 13.01 of article 4590i, together with certain 2003 amendments.[50] Under this revised legislative scheme, a trial court may grant one 30–day extension in order to cure any deficiency in a report prepared by an expert.[51] As discussed above, section 51.014 provides that there is no interlocutory appeal from a trial court's decision to grant such an extension.[52] Accordingly, I would not grant mandamus relief under former article 4590i when a trial court erroneously grants a 30–day extension. But I see no

43. *Id.* at 827–28.

44. 116 S.W.3d 821, 827 (Tex.App.-El Paso 2003, orig. proceeding).

45. 99 S.W.3d at 828.

46. 62 S.W.3d 924, 929–30 (Tex.App.-Texarkana 2001, orig. proceeding).

47. 93 S.W.3d 388, 390 (Tex.App.-Amarillo 2002, orig. proceeding).

48. 87 S.W.3d 773, 775 n. 3 (Tex.App.-Eastland 2002, orig. proceeding).

49. 110 S.W.3d 486, 487 (Tex.App.-Amarillo 2003, orig. proceeding), *mand. denied,* 47 Tex. Sup.Ct. J. 346 [03–0976] (March 5, 2004).

50. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (current version at TEX. CIV. PRAC. & REM. CODE § 74.351).

51. TEX. CIV. PRAC. & REM. CODE § 74.351(c).

52. *Id.* § 51.014(a)(9).

principled basis for withholding mandamus relief under former article 4590i when a trial court fails to dismiss a health care liability claim after the time for filing an expert report has come and gone, and a report meeting the statutory requirements has not been supplied. Nothing in the text or legislative history of either former article 4590i or the 2003 amendments suggests that mandamus relief was not contemplated by the Legislature. To the contrary, the text and purposes of the statute indicate that the Legislature expected courts to follow its directive and dismiss claims that did not meet the statutory expert report requisites.

## IV

Ten petitions for writ of mandamus are currently pending before the Court[53] that challenge trial courts' rulings in health care liability actions regarding the expert report requirements contained in section 13.01 of former article 4590i.[54] I would consider the merits of each petition rather than summarily deny relief. I would conditionally grant mandamus relief in three of the cases before us and hear oral argument in a fourth case, but I concur in the denial of relief in the six other proceedings for the reasons that follow.

In *In re Woman's Hospital of Texas, Inc.*,[55] the claimants sued a physician and a hospital and filed a report that was later supplemented. The trial court denied the hospital's motion to dismiss. The court of appeals denied mandamus relief in a very brief opinion, concluding that there was an adequate remedy by appeal,[56] but noting that this conclusion was contrary to *In re Collom & Carney Ass'n.*[57] For the reasons discussed above, I would hold that appeal is an inadequate remedy. Additionally, the expert statement tendered by the claimants in this case failed to meet section 13.01's requirements because it was almost exclusively directed at the physician. It says nothing about the standard of care applicable to the hospital, the manner in which the hospital failed to meet that standard, or how the hospital caused the injury claimed. I therefore would conditionally grant mandamus relief.

In *In re Horswell*,[58] the trial court denied a motion to dismiss, and the court of appeals denied mandamus relief in a brief memorandum opinion that did not state the basis for the decision. The patient in

---

53. An eleventh petition for writ of mandamus in this category was recently abated by this Court because a party filed for bankruptcy, *In re Hoekstra*, No. 13–03–00498–CV, 2003 WL —— (Tex.App.-Corpus Christi Oct. 2, 2003, orig. proceeding), *mand. abated*, 47 Tex. Sup. Ct. J. 276 [03–1012] (February 13, 2004), and a twelfth petition was recently abated pursuant to Texas Rule of Appellate Procedure 7.2(b) to allow a trial judge who has succeeded the trial judge who made the original ruling to reconsider that ruling. *In re Herrera*, No. 05–02–00003–CV, 2002 WL 193307 (Tex. App.-Dallas Feb.8, 2002, orig. proceeding), *mand. abated*, 47 Tex. Sup.Ct. J. 142 [02–1002] (December 19, 2003).

54. As noted above, in 2003 the expert report requirements of former subsection 13.01 of article 4590i were recodified with amend-

ments as section 74.351 of the Texas Civil Practice and Remedies Code. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (current version at TEX. CIV. PRAC. & REM. CODE § 74.351).

55. No. 14–02–00561–CV, 2002 WL —— (Tex. App.-Houston [14th Dist.] July 26, 2002, orig. proceeding), *mand. denied*, 47 Tex. Sup.Ct. J. 346 [02–0748] (March 5, 2004).

56. *Id.*

57. 62 S.W.3d 924, 929–30 (Tex.App.-Texarkana 2001, orig. proceeding).

58. No. 05–03–00474–CV, 2003 WL 1754010 (Tex.App.-Dallas Apr.3, 2003, orig. proceeding), *mand. denied*, 47 Tex. Sup.Ct. J. 346 [03–0334] (March 5, 2004).

this case died during a cardiac bypass procedure that was performed "off pump," meaning the patient was not placed on a heart-lung bypass pump. The claimants offered an expert's statement that was critical of Dr. Mack, the surgeon, and Dr. Horswell, the anesthesiologist. Only Horswell is seeking mandamus relief. The expert's statement did not draw any distinction between the respective obligations or roles of a surgeon and an anesthesiologist. The expert's statement did not set forth the standard of care for an anesthesiologist or explain whether it was the anesthesiologist's obligation to place the patient on a pump or to notify the surgeon that, in the anesthesiologist's opinion, the patient should be placed on a pump. The expert's statement was conclusory, at least with regard to Horswell, and I would conditionally grant mandamus relief.

In *In re Southside Family Care Associates, P.A.*,[59] the trial court denied a motion to dismiss, and the court of appeals denied mandamus relief in a brief memorandum opinion that did not state the basis for its decision. Milburn Blondell Jones was treated by a number of health care providers and ultimately died after a cardiac catheterization and later a cardiac bypass were performed. The claimants in this case sued the cardiologist, cardiovascular surgeon, family practitioner, Southside Family Care, Corpus Christi Medical Center, and others. Southside Family Care and Dr. Tschauner, a family practitioner, seek mandamus relief. The expert's statement tendered by the claimants does not opine that Southside Family Care breach-ed any standard of care or caused Mr. Jones's death. As to Tschauner, the statement does contain a conclusory statement that he and others caused Mr. Jones's death, but does not state what standard of care applied to Tschauner, how any standard was breached, or any causal connection between Mr. Jones's death and a failure by Tschauner to follow a standard of care. The expert's statement does not meet the requirements of subsection 13.01(r)(6) of former article 4590i.[60] I would conditionally grant mandamus relief.

The facts in *In re Fort Worth Osteopathic Hospital, Inc.*[61] present interesting issues that no Texas court seems to have yet addressed and that are worthy of this Court's attention. In this case, Donna McKinzie died after a triple coronary bypass. Her family sued Fort Worth Osteopathic Hospital. After the claimants had tendered an expert's statement, the hospital filed a motion to dismiss. The trial court did not expressly rule on that motion or two subsequent motions to reconsider, instead continuing each hearing on the motions and allowing the plaintiffs additional time for discovery. While the mandamus petition was pending in this Court, the discovery period allowed by the trial court ended (over a year after the first motion to dismiss was filed), and the hospital filed a third motion to reconsider. The case was transferred to a new trial judge, who denied the hospital's motion to reconsider and the plaintiffs' motion for additional time to modify the report.

**59.** No. 13–03–00535–CV, 2003 WL —— (Tex. App.-Corpus Christi Oct. 6, 2003, orig. proceeding), *mand. denied,* 47 Tex. Sup.Ct. J. 346 [03–0981] (March 5, 2004).

**60.** Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (former TEX. REV. CIV. STAT. art. 4590i, 13.01(r)(6)) (repealed 2003); *see also Bowie*

*Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002); *Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 878–79 (Tex. 2001).

**61.** No. 02–03–00169–CV, 2003 WL 21666812 (Tex.App.-Fort Worth July 7, 2003, orig. proceeding), *mand. denied,* 47 Tex. Sup.Ct. J. 346 [03–0668] (March 5, 2004).

The trial court apparently allowed additional time for discovery because medical records were, and remain, missing. The expert's statement reflects that McKinzie was transferred to the hospital on January 15 and coronary surgery occurred on January 23. The physician's medical records from January 15 through January 27 are missing, as are the physician's orders from January 22 through January 27 and the nurses' notes from January 22 through January 28. The claimants' expert states:

> It is impossible to determine the actual clinical course of events that led to Ms. McKinzie's progressive downhill course and eventual death, but it seems suspicious that such important documents are missing during that critical period of time.... I must, therefore, assume that some entry in those missing records indicates inappropriateness of care from the health care provider, including, but not limited to, physicians, nurses, or other hospital employees. I must also assume that such inappropriate, although undocumented at present, care was a causative factor in Ms. Donna McKinzie's death.

The hospital contends that the trial court abused its discretion both in granting the continuances and in refusing to dismiss the case despite the lack of an adequate expert report. The plaintiffs counter that to dismiss would reward the hospital for losing or destroying critical records. This case thus presents the issue of what effect spoliation of evidence, if any, has on article 4590i's expert report requirements. I would hear oral argument to allow the Court to consider this important issue.

My reasons for denying relief in the other mandamus proceedings are set forth below.

In *In re Shapiro*,[62] cranial surgery was performed on a child, and an infection resulted from a bone implant that was used. The child's parents sued, contending that there was no informed consent because they were not told that demineralized bone would be placed in their child's head. Dr. Shapiro, one of the defendants and a pediatric neurosurgeon, filed a motion to dismiss contending that the expert who supplied a statement was not qualified to opine and that her statement provided only a conclusory description of the standard of care, breach of that standard, and causation. The trial court denied the defendant's motion to dismiss, and the court of appeals denied mandamus relief.[63] Although the qualifications of the expert present a close question, I cannot say that the trial court abused its discretion. The expert did not have any experience or training in pediatric neurosurgery. She was board certified by the American Board of Pediatrics and specialized in pediatrics and pediatric infectious disease. But her statement says:

> My expertise includes a thorough knowledge and understanding of how the infectious process works as it relates to surgery, the cutting of bone, and the type of surgery involved in this case. I also have thorough knowledge concerning the coordination and responsibility of patient care as it relates to an admitting physician and his or her medical group. I am familiar with the standard of care applicable to ... Kenneth Shapiro, M.D.

Nor can I say that the trial court abused its discretion in concluding that the ex-

**62.** No. 05–03–00343–CV, 2003 WL 1059974 (Tex.App.-Dallas Mar.12, 2003, orig. proceeding), *mand. denied,* 47 Tex. Sup.Ct. J. 346 [03–0368] (March 5, 2004).

**63.** *Id.* at *1.

pert's statement adequately addressed informed consent regarding the use of demineralized bone implanted material.[64] Accordingly, I would deny the petition for writ of mandamus in this case.

The trial court in *In re Rodriguez*[65] ruled that the first statement submitted by the expert did not meet the requirements of article 4590i. However, the trial court also concluded that the failure to file an adequate report was due to counsel's mistaken belief that the statement met the statutory requirements. The trial court ruled that this constituted "an accident or mistake" within the meaning of former subsection 13.01(g) of article 4590i and granted a 30–day extension. The claimants then filed another expert statement.

Dr. Rodriguez, one of four defendants in the trial court, sought mandamus relief in the court of appeals challenging only the trial court's 30–day extension. He did not challenge the second expert statement. The court of appeals held that counsel's mistaken belief as to the adequacy of the first expert statement satisfied the "accident or mistake" provision in former subsection 13.01(g).[66] The court of appeals' decision was issued before this Court held to the contrary in *Walker v. Gutierrez.*[67] Nevertheless, I would deny mandamus relief in this case in light of the Legislature's policy decision that is reflected in the 2003 amendments. Under current section 74.351(c), a trial court may grant one 30–day extension,[68] and an interlocutory ap-

---

**64.** The statement says:

The use of these [demineralized bone and related] products and the repercussions of infection involving these implanted materials instead of her own skull bone was apparently not explained to her parents prior to surgery. I understand that the use of the child's own bone in the surgery, rather than an implant or implanted material, was an important factor in the parents' decision to allow Dr. Salyer to operate at that time. In fact, the operative note for the January 18, 2000 surgery refers to the use of "autologous" bone, and does not refer to implanting demineralized bone in the child's head, although it later refers to "demineralized dust" being used to contour portions of the skull.

\* \* \*

The informed consent forms in the hospital record offer several options for the physician to choose and the patient to initial depending upon the type of surgery involved. Two of those choices, namely, "osteotomy" under Section 12.4, and "correction of cranial deformity" under Section 13.5, apparently were not checked off. The "osteotomy" portion of the consent form is particularly significant because it indicates the possible repercussions of surgery involving the cutting of bone that the patient must understand in order for them to give their proper consent for the surgery. These repercussions include the possible need to replace any implanted bone material that

may be placed in the patient or that a bone infection could develop. Regardless of whether these repercussions appear on the form, however, the standard of care required that that [sic] the parents be informed of this information before consenting to the surgery. Bone infection is precisely what Lisa Wilcox ultimately developed in this case, and implanted material was removed from her head [in a subsequent surgery]. The applicable standard of care required that Lisa Wilcox's parents be advised of these risks and repercussions. Dr. Shapiro and Dr. Salyer breached the standard of care by not explaining to Lisa Wilcox's parents that demineralized material may be used, or the repercussions that could result from the use of such implants before they consented to the surgery. That breach resulted in uninformed, improper consent being given for the surgery, and the subsequent infection, surgery, and need for the future surgeries described above.

**65.** 99 S.W.3d 825 (Tex.App.-Amarillo 2003, orig. proceeding), *mand. denied,* 47 Tex. Sup. Ct. J. 346 [03–0474] (March 5, 2004).

**66.** *Id.* at 829.

**67.** 111 S.W.3d 56, 64–65 (Tex.2003).

**68.** TEX. CIV. PRAC. & REM. CODE § 74.351(c).

peal is not available from such an order.[69] Under former subsection 13.01(f), a trial court could "for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30–days."[70] I would not grant any greater remedy by mandamus in cases governed by former article 4590i than is available by interlocutory appeal after the 2003 amendments. Accordingly, I agree that mandamus relief should be denied in this case.

Three other mandamus proceedings arise out of the same suit in the trial court and have been consolidated in this Court.[71] As in *Rodriguez*, the trial court granted a 30–day extension to file an expert statement because counsel said that he mistakenly believed that the statement met the statutory requirements. Only the 30–day extension is challenged. For the same reasons that I would deny relief in *Rodriguez*, I would deny relief in these cases.

Finally, I concur that relief should be denied in *In re Barker*.[72] The trial court denied the defendant's motion to dismiss, and the court of appeals denied mandamus relief.[73] The court of appeals observed that "[n]either party disputes that in this type of matter, this court would have jurisdiction to issue a writ of mandamus if it were justified,"[74] and the court proceeded to decide the case on the merits. The court of appeals' opinion quotes from the expert's statement at length, and I agree with that court that the report met the requirements of former article 4590i.[75]

## V

While I appreciate that the Court may fear that granting mandamus relief in health care liability cases could give rise to arguments in other types of cases that we should alter or relax the standards for granting mandamus relief set forth in *Walker v. Packer*,[76] any such fear does not justify withholding relief in health care liability cases for at least three reasons. The first is that granting mandamus is entirely consistent with *Walker v. Packer* and cases following it for the reasons discussed above. The second reason is that the Court is free to reject arguments in other types of cases that we should alter or relax the *Walker v. Packer* requirements for mandamus as a general proposition. The third and most important reason is that we are faced with

**69.** *See id.* § 51.014(a)(9) (stating that "an appeal may not be taken from an order granting an extension under Section 74.351").

**70.** Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (former TEX. REV. CIV. STAT. art. 4590i, § 13.01(f)) (repealed 2003).

**71.** *In re Riverside Hosp., Inc.*, No. 13–03–00499–CV, 2003 WL —— (Tex.App.-Corpus Christi Oct. 2, 2003, orig. proceeding), *mand. denied*, 47 Tex. Sup.Ct. J. 346 [03–1015] (March 5, 2004); *In re Farley*, No. 13–03–00517–CV, 2003 WL —— (Tex.App.-Corpus Christi Oct. 2, 2003, orig. proceeding), *mand. denied*, 47 Tex. Sup.Ct. J. 346 [03–1056] (March 5, 2004); *In re Redels*, No. 13–03–00516–CV, 2003 WL —— (Tex.App.-Corpus Christi Oct. 2, 2003, orig. proceeding), *mand. denied*, 47 Tex. Sup.Ct. J. 346 [03–1062]

(March 5, 2004). A fourth petition for writ of mandamus arising out of the same underlying lawsuit has been abated pursuant to bankruptcy. *See In re Hoekstra*, No. 13–03–00498–CV, 2003 WL —— (Tex.App.-Corpus Christi Oct. 2, 2003, orig. proceeding), *mand. abated*, 47 Tex. Sup.Ct. J. 276 [03–1012] (February 13, 2004).

**72.** 110 S.W.3d 486 (Tex.App.-Amarillo 2003, orig. proceeding), *mand. denied*, 47 Tex. Sup. Ct. J. 346 [03–0976] (March 5, 2004).

**73.** *Id.* at 491.

**74.** *Id.* at 487.

**75.** *Id.* at 489–90.

**76.** 827 S.W.2d 833, 839–44 (Tex.1992).

clearly articulated legislative policy that health care liability claims are to be dismissed unless there is an adequate expert report, and the Legislature has concluded that this requirement is a necessary part of a plan to confront what the Legislature perceives to be a crisis in this state.

* * * * *

For the foregoing reasons, I respectfully dissent from the denial of the petitions for writ of mandamus in *In re Woman's Hospital of Texas, Inc., In re Horswell, In re Southside Family Care,* and *In re Fort Worth Osteopathic Hospital, Inc.* I concur in the denial of the six other proceedings identified above, but I would deny the petitions based on their merits. I would not deny them on the basis that mandamus relief is never appropriate in cases governed by former article 4590i.