NO. 07-04-0363-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 27, 2005



______________________________




IN RE NORTHWEST TEXAS HEALTHCARE SYSTEM, INC.



AND HARVEY ROSS SHADBOLT, CRNA, RELATORS



_________________________________






Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.


ON PETITION FOR WRIT OF MANDAMUS



 In this original proceeding, relators Northwest Texas Healthcare System, Inc. and
Harvey Ross Shadbolt, C.R.N.A., defendants in a healthcare liability claim, (1) seek writ of
mandamus directing the Honorable Don R. Emerson, Repondent, Judge of the 320th District
Court, to vacate the order entered by Judge Richard Dambold on June 16, 2004, in which
the court abused its discretion by granting real parties in interest an extension of 30 days
to file an expert report which meets the requirements of article 4590i and to dismiss the
suit. We conditionally grant the writ.

BACKGROUND

 Real parties in interest, Susan Roberts and John R. Roberts, Jr., individually and as
next friends of their three minor children (collectively the Roberts), filed a healthcare liability
claim against Northwest and Shadbolt. Pursuant to their obligation to file an expert report,
the Roberts filed reports from John Stirling Meyer, M.D., Ralph S. Carungi, D.O., FACS,
FOCOS, and Maria O. Scarpelli, R.N.C., C.M.S.R.N. Northwest and Shadbolt filed motions
to dismiss. (2) In response, the Roberts asserted the reports were sufficient, but filed a
motion for a section 13.01(g) grace period claiming that, if the reports were found
insufficient, they were entitled to a 30-day grace period because they mistakenly believed
that the reports satisfied the requirements of section 13.01(r)(6). After hearing, the trial
court found the reports insufficient, granted the Roberts' motion for grace period, and
denied Northwest's and Shadbolt's motions to dismiss.

 Northwest and Shadbolt contend the trial court abused its discretion in granting the
Roberts a 30-day grace period and pray for issuance of writ of mandamus directing
respondent to vacate the order granting the grace period and to dismiss the Roberts' suit
with prejudice.

 The Roberts urge mandamus is inappropriate because an adequate remedy is
available by appeal. The Roberts also contend the insufficient reports were not intentional
or the result of conscious indifference, but were due to accident or mistake, and the trial
court did not abuse its discretion in granting the grace period.

AVAILABILITY OF MANDAMUS

 The writ of mandamus is an extraordinary remedy that will issue only to correct a
clear abuse of discretion or the violation of a duty imposed by law when there is no
adequate remedy by law. See Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 305
(Tex. 1994) (orig. proceeding). 

 The Roberts contend that mandamus relief is unavailable to remedy an erroneous
grant of a grace period. In support, the Roberts rely upon inferences presented by the
summary denial of mandamus relief in In re Woman's Hosp. of Texas, Inc., 141 S.W.3d
144 (Tex. 2004). However, the Court's summary denial of a petition for writ of mandamus
"is not an adjudication of, nor even a comment on, the merits of a case in any respect,
including whether mandamus relief was available." See In re AIU Ins. Co., 148 S.W.3d
109, 118-19 (Tex. 2004).

 This Court has held that an erroneous grant of a section 13.01(g) grace period
denies a party an adequate remedy by law. See In re Rodriguez, 99 S.W.3d 825, 827-28
(Tex.App.-Amarillo 2003, orig. proceeding); In re Morris, 93 S.W.3d 388, 390
(Tex.App.-Amarillo 2002, orig. proceeding). Pending a definitive ruling from the high court,
we continue to adhere to such view. See In re Windisch, 138 S.W.3d 507, 510
(Tex.App.-Amarillo 2004, orig. proceeding). Accordingly, if the trial court abused its
discretion in granting the grace period, mandamus is available to remedy the error.

ABUSE OF DISCRETION

 Article 4590i requires a healthcare liability claimant to provide an expert report that
fairly summarizes the expert's opinions regarding the applicable standard of care, the
manner in which the standard was breached, and the causal relationship between the
breach and the harm caused. § 13.01(r)(6). Each element must be satisfied as to each
defendant healthcare provider or the trial court must dismiss the claim. § 13.01(e). A
claimant that fails to timely file an adequate expert report may obtain a 30-day grace period
if the trial court finds that the failure was not intentional or the result of conscious
indifference, but was due to accident or mistake. § 13.01(g).

 The purposes of the expert report requirement are to inform the defendant of the
specific conduct the plaintiff is challenging and to provide the trial court with a basis to
conclude the claim has merit. American Transitional Care Ctrs. of Texas, Inc. v. Palacios,
46 S.W.3d 873, 879 (Tex. 2001). The Court has identified two instances when an expert
report, on its face, fails to fulfill these purposes: (1) when the report omits one or more of
the required elements, and (2) when the report does no more than state the expert's mere
conclusions about the required elements. Id. In Walker, the Court held that a claimant's
mistaken belief that a report that omits any of the elements was adequate is not a sufficient
excuse to negate a finding of intent or conscious indifference nor entitle a claimant to a
grace period. Walker v. Gutierrez, 111 S.W.3d 56, 65 (Tex. 2003). See also Horizon/CMS
Healthcare Corp. v. Fischer, 111 S.W.3d 67, 68 (Tex. 2003). Likewise, a report is facially
insufficient if it does no more than state the expert's mere conclusions about the elements
and a belief that such a report was adequate does not negate a finding of intent or
conscious indifference. As a result, such a belief does not entitle a claimant to a grace
period. See In re Brown, No. 07-04-0455-CV, 2005 WL 176504, at *2 (Tex.App.-Amarillo
January 27, 2005, orig. proceeding).

 In the present case, the reports, as they relate to Shadbolt, are facially insufficient
in that they omit or state mere conclusions about the applicable standard of care, how it
was breached, and how such breach caused Susan's injuries. Neither Scarpelli nor
Carungi address the elements as they specifically relate to Shadbolt or as generally
applicable to a nurse anesthetist. Meyer concludes that Shadbolt's positioning of Susan's
neck caused her brain herniation and that Shadbolt breached the standard of care by not
insisting on emergency surgery. However, Meyer does not explain how a reasonably
prudent nurse anesthetist would have performed the positioning, how Shadbolt's
positioning of Susan's neck was deficient, or how such positioning caused Susan's injuries. 
Meyer also does not indicate that a reasonably prudent nurse anesthetist has authority to
insist on emergency surgery or owes a duty to do so. We conclude the reports state no
more than mere conclusions regarding the required elements as they relate to Shadbolt
and the Roberts' mistaken belief that the reports were sufficient does not negate a finding
of intent or conscious indifference.

 The reports, as they relate to Northwest, are also facially insufficient because they
omit or state mere conclusions about the standard of care, how it was breached by
Northwest, and how such breach caused Susan's injuries. Meyer does not address any
of the required elements as they relate to Northwest or any of its employees. Carungi
opines that the applicable standard of care for the hospital was to timely monitor the status
of the cyst, timely and appropriately treat the condition, timely assess Susan's status, and
timely drain the intracranial pressure. However, Carungi wholly fails to explain how often
or how quickly Northwest and its employees should have performed these tasks in order
to have done them in a "timely" fashion. Further, Carungi fails to explain how the actions
of Northwest and its employees caused Susan's injuries. Scarpelli presents 11 general
nursing standards of care. She concludes that the nurses breached these standards by
not being knowledgeable and proficient in the care and assessment of a patient with a
neurological condition, failing to adequately and timely perform neurologic status
assessments, failing to recognize Susan's deteriorating condition, and failing to
communicate pertinent assessment data to the physicians. Scarpelli fails to identify any
of the facts relevant to the applicable standard nor does she explain how variance in the
facts would alter the standard. We fail to see how Scarpelli gives any guidance as to the
applicable standard of nursing care, how it was breached or how such a breach caused
Susan's injuries when she wholly fails to apply her general discussion of the required
elements to the relevant facts of this case. (3) We conclude the reports state no more than
mere conclusions regarding the required elements as they relate to Northwest.

 As the reports either omit or do no more than state the experts' mere conclusions
about the elements required in an expert report, the Roberts' belief that the reports
complied with the statute will not support a finding of accident or mistake. See Walker, 111
S.W.3d at 64-65; In re Brown, 2005 WL 176504, at *2. Under such circumstances, the trial
court was not authorized by section 13.01(g) to grant a grace period and abused its
discretion in doing so. See Walker, 111 S.W.3d at 65; In re Brown, 2005 WL 176504, at
*2. Therefore, we conditionally grant the writ of mandamus.

CONCLUSION

 Shadbolt and Northwest are entitled to the relief sought. We conditionally grant the
writ of mandamus. We are confident the trial court will grant the relief required by section
13.01(e) and this opinion. We will direct the clerk to issue the writ only in the event the trial
court fails to grant the relief. 

 Per Curiam

Johnson, C.J., not participating.
1. Repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen.
Laws 847, 884, current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001-74.507
(Vernon Pamph. Supp. 2004-05). References to subsections of article 4590i will be by
reference to "section __" or "§ __."
2. Shadbolt filed an Objection to Adequacy of Plaintiff's Expert Report. The trial
court's order stated that it considered this motion a motion to dismiss. The Roberts have
raised no objection to this ruling.
3. "[T]o conform to the dictates of Palacios, the report must contain a description of
the circumstances confronting the doctor and which purportedly obligated him to respond
in a particular manner. Kirksey v. Marupudi, No. 07-03-0076-CV, 2003 WL 23096028, *3
(Tex.App.-Amarillo Dec. 30, 2003, no pet. h.). Without them, no one can determine how
a reasonable physician would have acted or whether the conduct actually undertaken
caused any injury." Id.



ecord must show a timely
request, objection, or motion. Tex. R. App. P. 33.1(a)(1). Constitutional rights, including
the right to be free from cruel and unusual punishment, may be waived. Castaneda v.
State, 135 S.W.3d 719, 723 (Tex.App.-Dallas 2003, no pet.). Consequently, Appellant
preserved nothing for review and issue one is resolved against Appellant. 

 Appellant contends by his second issue that the trial court should have granted his
motion to suppress illegally obtained evidence. Specifically, he argues (1) the affidavit in
support of the search warrant of his home was based upon material misinformation and
omissions and (2) no nexus was shown between the search of his Iowa home and the
alleged Wisconsin crimes of child enticement and use of a computer to facilitate a child sex
crime. We disagree.

 Appellant filed a motion to suppress the evidence obtained from his home and also
requested a Franks v. Delaware hearing in his motion. (4) He alleged, among other things,
that Detective Bentz's affidavit contained material misrepresentations and omissions made
intentionally or with reckless disregard for the truth. Detectives Bentz and Henderson both
testified at the hearing. Following presentation of the evidence, the State acknowledged
discrepancies between Detective Bentz's affidavit and his testimony, but nevertheless
argued that Appellant failed to meet his burden under Franks to show that Bentz
intentionally and knowingly made false statements or that he made statements with reckless
disregard for the truth. At the conclusion of the hearing, the trial court ruled:

 [w]ith respect to the argument that Detective Bentz perpetrated fraud on the
magistrate that issued the search warrant, I strongly disagree with that. There
are statements that are conflicting for sure. There are statements that appear
to be just wrong.

 But looking at everything from a totality of the circumstances and
understanding that Detective Bentz was talking with the other officers prior to
the other officers writing their reports, writing the inventories, the things that
they put in writing that [defense counsel] is referring to now, taking a look at
all that, I don't find that Detective Bentz intentionally misled anyone. I also
don't find that - or I do find that he did not make statements with reckless
disregard as to their truth.

 I think there was some miscommunication in this case. My opinion is that's
what it amounts to.

 Even if you throw all of that out, however, the Court finds that there's still
probable cause to issue the search warrant for the reasons stated, the
underlying reason for the issuance of the search warrant, the reason that they
were going to the magistrate in the first place.


Following its reasoning, the trial court denied Appellant's motion to suppress. Appellant
then entered open pleas of guilty to all counts. 

 A trial court's ruling on a motion to suppress is reviewed for abuse of discretion.
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); Oles v. State, 993 S.W.2d
103, 106 (Tex.Crim.App. 1999). We apply a bifurcated standard of review giving almost
total deference to the trial court's determination of historical facts and reviewing de novo its
application of the law to those facts. Laney v. State, 117 S.W.3d 854, 857 (Tex.Crim.App.
2003). See also Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Absent
findings of fact, we view the evidence in the light most favorable to the trial court's ruling and
assume the trial court made implicit findings of fact that support its ruling as long as those
findings are supported by the record. (5) State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App.
2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). At a suppression
hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to
be given their testimony. Wyatt v. State, 23 S.W.2d 18, 23 (Tex.Crim.App. 2000).

 Under Franks v. Delaware, a defendant bears the burden of showing by a
preponderance of the evidence at a suppression hearing that an affidavit contains a false
statement made either knowingly and intentionally or with reckless disregard for the truth. 
438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). If a defendant makes an offer
of proof in support of the allegations and demonstrates that if the false material of the
affidavit is excised and the abridged affidavit is insufficient to support probable cause, the
warrant must be voided and the fruits of the search "excluded to the same extent as if
probable cause was lacking on the face of the affidavit." Id. See also Hinojosa v. State, 4
S.W.3d 240, 246-47 (Tex.Crim.App. 1999). The Supreme Court declined to extend the rule
of exclusion to instances where police are merely negligent in collecting facts. Franks, 438
U.S. at 154. See also Dancy v. State, 728 S.W.2d 772, 783 (Tex.Crim.App. 1987), cert.
denied, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987) (providing that a misstatement
in an affidavit that is the result of simple negligence or inadvertence will not invalidate a
warrant). Additionally, at a Franks hearing, the trial judge is owed great deference as the
sole fact-finder and judge of the witnesses' credibility. Janecka v. State, 937 S.W.2d 456,
462 (Tex.Crim.App. 1996). The trial court's ruling will be overruled only if it is outside the
bounds of reasonable disagreement. Id.

 Great deference should be given to a magistrate's determination of probable cause. 
Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Swearingen
v. State, 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004). Warrants should not thereafter
be invalidated through "hypertechnical" interpretation of their supporting affidavits. Gates,
462 U.S. at 236. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the
"veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair
probability that contraband or evidence of a crime will be found in a particular place. Gates,
462 U.S. at 238. The duty of a reviewing court is simply to determine whether, considering
the totality of the circumstances, the magistrate had a substantial basis for concluding that
probable cause existed to support the issuance of the warrant when viewing the affidavit. 
Id. at 238-39. 

 Appellant argues the magistrate in Iowa was mislead into issuing a search warrant
based upon the following material misinformation and or omissions contained in Detective
Bentz's affidavit:



Bentz's Affidavit
1. "The [Appellant] meet (sic) the victim
and took [her] to the area of the swing
sets and 'French Kissed' KMB DOB
9/28/88 there." 

 

2. "[T]he subject had an open box of
condoms one open condom package .
. ." 
 
 
 


3. "[T]he subject had . . . Viagra tablets in
the hotel room." 



 


 

4. "[T]he subject had . . .several pills of
an unknown substance . . . in the hotel
room." 

 
 

5. "[T]he subject had . . . an 8mm camera
. . . in the hotel room."



6. "The subject voluntarily consented to
allow officers to search the room and his
vehicle and officers recovered a camera
tripod and more video tapes."


7. "One tape shows the [Appellant]
having sexual intercourse with a female
subject that appears to be under the
influence of alcohol or a controlled
substance."


Alleged Misinformation or Omission


1. KMB was accompanied to the park by
a friend. 
 
 


2. A box of condoms was found behind a
night stand between two beds in the hotel
room. Nothing connected Appellant to the
condoms and there was no way to
determine whether Appellant had even
touched them.


3. There was one-half of a Viagra tablet
found in a prescription bottle belonging to
the Appellant. The prescription bottle was
found in Appellant's vehicle, not the hotel
room. 


4. The pills were not illegal, nor were they
a controlled substance. The pills were
found in Appellant's vehicle, not the hotel
room.


5. The 8mm camera was found in
Appellant's vehicle.



6. Only one videotape was recovered and
it was recovered from the 8mm camera.



 

7. The affidavit fails to state that the
female appeared to be an adult.
 The State acknowledges that Detective Bentz's affidavit contained mistakes and
omissions, but explains they were not made intentionally nor with reckless disregard for the
truth. At the suppression hearing, Bentz clarified discrepancies regarding the condom box
and open package, the 8 millimeter camera, and Viagra prescription by explaining that he
relied on verbal information from patrol officers and detectives to draft his affidavit. He did
not yet have written reports to reference and needed to act immediately to prevent
destruction of any electronic evidence. He did not mention that the female in the videotape
found in the 8 millimeter camera appeared to be an adult because he was not positive of
her age. The "several pills of an unknown substance" mentioned in the affidavit were
determined to be over-the-counter allergy pills after the affidavit was drafted. During
redirect examination, Detective Bentz denied that his affidavit contained either false
statements or statements made with reckless disregard for the truth. 

 Deferring to the trial court's conclusion that Detective Bentz's affidavit did not contain
either false statements or statements with reckless disregard for the truth, we cannot
conclude the trial court abused its discretion. Accordingly, we find against Appellant on his
contention that the Iowa magistrate was mislead into issuing the search warrant based upon
any misstatements of fact.

 The Texas Court of Criminal Appeals has not yet determined whether a Franks
analysis applies to omissions as well as false statements. See Massey v. State, 933
S.W.2d 141, 146 (Tex.Crim.App. 1996). However, in Renteria v. State, 206 S.W.3d 689,
704 (Tex.Crim.App. 2006), the Court assumed application of Franks to omissions and
concluded that even if information omitted from an affidavit in support of a search warrant
had been included, sufficient probable cause existed to issue the search warrant.

 As to omissions from the affidavit, we also conclude Appellant did not establish that
certain facts were omitted intentionally or with reckless disregard for their truth. See
Massey, 933 S.W.2d at 146. Therefore, even assuming that Franks applies to the alleged
omissions, we believe the Iowa magistrate would have had sufficient probable cause to
issue the search warrant even if the omissions had been included in Detective Henderson's
affidavit. The search warrant affidavit would still have averred that Appellant had been
communicating over the Internet and via electronic mail, as well as telephone
conversations, with KMB, a minor, with the intent of having a sexual relationship with KMB. 
Again deferring to the trial court's conclusion, we cannot say the trial court abused its
discretion in finding that the Iowa magistrate would have had sufficient probable cause to
issue the search warrant.

 The second argument advanced by Appellant in his suppression issue is the lack of
nexus between the search of his home in Iowa and the charged offenses in Wisconsin of
child enticement and use of a computer to facilitate a child sex crime. He urges that the
search of his home resulted in a "fishing expedition."

 The basic purpose of the Fourth Amendment is to safeguard the privacy and security
of individuals against arbitrary invasion of governmental officials. Berger v. New York, 388
U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The requirement that a search
warrant be specific prohibits general searches and prevents the vesting of complete
discretion in the officer who executes the warrant. Id. at 55-56. "Mere evidence," as
distinguished from fruits or instrumentalities of a crime, may be seized, provided there is a
nexus between the items seized and the crimes under investigation. Warden, Maryland
Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). 
However, nexus between items to be seized and criminal behavior is automatically provided
in the case of fruits or instrumentalities. Id.

 In the instant case, most of the items enumerated in the search warrant, i.e., camera,
computers, and items related thereto, constituted fruits or instrumentalities of the charged
offenses and nexus was automatically provided. Appellant's argument that nexus was not
established between the search of his home and the charged offenses is misplaced. Both
arguments comprising Appellant's challenge to the trial court's denial of his motion to
suppress are overruled.

 By his final issue, Appellant claims prejudice in the prosecutor's use of leading
questions during the motion to suppress hearing. We disagree. Rule 611(c) of the Texas
Rules of Evidence does not prohibit the use of leading questions. See Wyatt, 23 S.W.3d
28-29. It provides that leading questions should not be used during direct examination of
a witness except as necessary to develop the testimony of that witness. Tex. R. Evid.
611(c). It is within the sound discretion of the trial court to permit the use of leading
questions during direct examination. Wyatt, 23 S.W.3d at 28. To establish abuse of
discretion, an appellant must show he was unduly prejudiced by use of leading questions. 
Hernandez v. State, 643 S.W.2d 397, 400 (Tex.Crim.App. 1982), cert. denied, 462 U.S.
1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983).

 Appellant recognizes that the use of leading questions seldom results in reversible
error. Uhl v. State, 479 S.W.2d 55, 57 (Tex.Crim.App. 1972). However, relying on State
v. Hosey, 348 S.E.2d 805 (N.C. 1986), he argues that when leading questions result in
testimony from the prosecutor rather than the witness, reversible error occurs. We are
bound to follow the law as it is pronounced by the Texas Court of Criminal Appeals and see
no compelling reason to apply the rationale of Hosey in this case. See Swilley v. McCain,
374 U.S. 871, 875 (Tex. 1964). 

 According to Appellant, approximately 122 leading questions were asked of Detective
Bentz during direct examination and 121 leading questions during re-direct examination. 
He argues the questions suggested the answers. Appellant interjected, and the trial court
sustained, five leading question objections early during the suppression hearing. Following
the fifth objection, the trial court admonished the prosecutor it wanted to "hear the witness's
testimony." No further leading question objections were made after the prosecutor was
admonished despite Appellant's calculations that several hundred leading questions were
asked. By failing to object and obtain an adverse ruling each time the prosecutor asked a
leading question, Appellant has not preserved this issue for review. See Tex. R. App. P.
33.1(a); Garner v. State, 939 S.W.2d 802, 807 (Tex.App.-Fort Worth 1997, pet. ref'd). See
generally Hudson v. State, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984) (holding that
defense counsel must object each time allegedly inadmissible evidence is offered). Issue
three is overruled. 

 Having overruled Appellant's issues, the trial court's judgments are affirmed.


 Patrick A. Pirtle

 Justice

 


Publish.
1. Appellant was also convicted in Federal court of producing child pornography,
enticement of a child, and traveling across State lines with intent to engage in a sexual act
with a juvenile, which convictions were affirmed in United States v. Wise, 447 F.3d 440 (5th
Cir. 2006). He was sentenced to 168 months confinement and three years of supervised
release. Id. at 445.
2. A person is guilty of child enticement if with intent to commit certain enumerated
acts, he "causes or attempts to cause any child who has not attained the age of 18 years
to go into any vehicle, building, room, or secluded place." A person is guilty of use of a
computer to facilitate a child sex crime if that person "uses a computerized communication
system to communicate with an individual who the actor believes or has reason to believe
has not attained the age of 16 years with intent to have sexual contact or sexual
intercourse with the individual in violation of s. 948.02 (1) or (2) is guilty of a Class C
felony." 
3. In support of his argument, Appellant relies on Solem v. Helm, 463 U.S. 277, 290
103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). It is, however, no longer controlling following the
decision in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991),
that "Solem was simply wrong; the Eighth Amendment contains no proportionality
guarantee."
4. Franks held that where a defendant makes a substantial preliminary showing that
a false statement in a warrant affidavit was made knowingly and intentionally, or with
reckless disregard for the truth, and if that statement was necessary to a finding of
probable cause, the Fourth Amendment requires a hearing at defendant's request. Franks
v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
5. Effective June 28, 2006, the trial court shall make findings of fact when requested
by the losing party. See State v. Cullen, 195 S.W.3d 696, 699 (Tex.Crim.App. 2006). If
no findings of fact are requested, State v. Ross, 32 S.W.3d 853 (Tex.Crim.App. 2000)
continues to control. Id.