IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0892
════════════
 
In re McAllen Medical Center, 
Inc., D/B/A
McAllen MedicalCenter and Universal Health 
Services, Inc., Relator
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued December 5, 
2006
 
 
            
Justice Brister delivered the opinion of the Court, in 
which Justice Hecht, Justice Medina, Justice Green, 
Justice Johnson and Justice Willett joined.
 
            
Justice Wainwright filed a dissenting opinion, in which 
Chief Justice Jefferson and Justice O’Neill joined. 
 
            
Appellate courts cannot afford to grant interlocutory review of every 
claim that a trial court has made a pre-trial mistake. But we cannot afford to 
ignore them all either. Like “instant replay” review now so common in major 
sports, some calls are so important — and so likely to change a contest’s 
outcome — that the inevitable delay of interim review is nevertheless worth the 
wait. 
            
Although mandamus review is generally a matter within our discretion, our 
place in a government of separated powers requires us to consider also the 
priorities of the other branches of Texas government.[1] One of those is implicated here — 
repeated findings by the Legislature that traditional rules of litigation are 
creating an ongoing crisis in the cost and availability of medical care.[2] To meet this crisis, the Legislature 
declared that plaintiffs must support health care claims with expert reports 
shortly after filing,[3] something they have long had to do at 
trial.[4] This expedited deadline will of course 
never accomplish the purposes of the Texas Legislature unless it is enforced by 
Texas 
courts.
            
Four years ago, this Court denied several petitions seeking mandamus 
relief when the statutorily required reports were allegedly inadequate. The 
courts of appeals have disagreed since then whether this action means that 
mandamus review is never available in such cases — several concluding that it 
does,[5] and several concluding that it does 
not.[6] We granted the petition here to settle 
the question. We now hold that mandamus relief is available when the purposes of 
the health care statute would otherwise be defeated.
I. Background
            
The relator hospital, McAllenMedicalCenter, granted credentials to Dr. 
Francisco Bracamontes to perform thoracic surgery at 
the hospital. Dr. Bracamontes got his medical 
education in Mexico, was 
licensed to practice medicine in Texas, and had 
completed a three-year fellowship at the Texas Heart Institute in Houston. But he was not 
board certified in thoracic surgery, as only physicians who have completed 
residencies at accredited U.S. hospitals are eligible for such 
certification.
            
In 1999, competing mass-tort cases involving treatment by Dr. Bracamontes were filed — one as a class action,[7] 
and this case by 400 plaintiffs representing 224 former patients.[8] 
As required by statute, the plaintiffs in this case submitted expert reports 
regarding all 224 patients, all signed by Dr. Jetta 
Brown. The hospital moved to dismiss on the basis (among others) that Dr. Brown 
was not qualified to comment on the issues here. After sitting on the motion for 
four years, the trial court finally denied it. The hospital then sought mandamus 
relief in the Thirteenth Court of Appeals, which was denied.[9] 

            
The hospital now requests mandamus relief in this Court. To be entitled 
to such relief, a petitioner must show that the trial court clearly abused its 
discretion and that the relator has no adequate remedy 
by appeal.[10] We address each in turn.
I. Clear Abuse of Discretion
A. Negligent Credentialing
            
In her initial reports, Dr. Brown addressed a single claim against the 
hospital: that it had been negligent in “hiring, retention and supervision of 
Dr. Francisco Bracamontes.” We have held that such 
claims are health care liability claims.[11] Thus, they had to be supported within 180 
days of filing by an expert report signed by a person with knowledge, training, 
or experience concerning the applicable standard of care.[12]
            
The curriculum vitae the plaintiffs submitted for Dr. Brown was a model 
of brevity. It lists where she went to high school and college, but not medical 
school. It discloses a “general surgery internship,” but not when it took place 
or how long it was. For employment, it shows two years practicing emergency 
medicine (1978–80), twenty years in solo family practice (1980–2000), five years 
“specializing in medical-legal issues” (1995–2000), and a “house call business 
in general medicine” since 2000. It lists no hospitals where she is on staff, or 
has been for twenty years, though in her reports Dr. Brown says she has worked 
as a “surgical assistant” and attended “heart catherizations” [sic] regarding some of her patients. There 
is nothing else in either the CV or the reports to suggest she has special 
knowledge or expertise regarding hospital credentialing. 
            
On this record, the plaintiffs have not established Dr. Brown’s 
qualifications. “The standard of care for a hospital is what an ordinarily 
prudent hospital would do under the same or similar circumstances.”[13] Nothing in the record here shows how Dr. 
Brown is qualified to address this standard. Nor can we infer that she may have 
some knowledge or expertise that is not included in the record.[14] 
            
Moreover, “a negligent credentialing claim involves a specialized 
standard of care” and “the health care industry has developed various guidelines 
to govern a hospital’s credentialing process.”[15] Dr. Brown’s reports contain no reference 
to any of those guidelines, or any indication that she has special knowledge, 
training, or experience regarding this process. Nor was Dr. Brown qualified 
merely because she is a physician; “given the increasingly specialized and 
technical nature of medicine, there is no validity, if there ever was, to the 
notion that every licensed medical doctor should be automatically qualified to 
testify as an expert on every medical question.”[16] 
            
As the plaintiffs’ only reports supporting the credentialing claims 
against the hospital were submitted by a doctor who was not qualified for that 
purpose, the trial court committed a clear abuse of discretion by concluding 
these reports were adequate.[17]
B. Other Causes of Action 
            
In addition to their credentialing claim, the plaintiffs pleaded that Dr. 
Bracamontes was the hospital’s agent, and thus was 
vicariously liable for his negligence. This claim is viable only if the doctor 
was negligent, so it too is a health care liability claim and must be supported 
by an expert report. But nothing in Dr. Brown’s reports suggest the hospital 
controlled the details of his medical tasks (a requirement for hospital 
liability),[18] and the plaintiffs do not argue otherwise 
on appeal. 
            
But they do argue that even if their expert reports were inadequate, 
dismissal would be improper as to their fraud, fraudulent concealment, civil 
conspiracy, and misrepresentation claims as these do not involve health care.[19] Their pleadings show otherwise. The civil 
conspiracy they alleged was that the defendants “conspired to commit malicious 
physician credentialing and fraud”; the fraud, fraudulent concealment, and 
misrepresentations they pleaded related to “material facts regarding Dr. Bracamontes’ qualifications to perform cardiac surgery.” 
These are simply clandestine credentialing claims.
            
Finally, the plaintiffs asserted that the hospital advertised all its 
heart surgeons as board certified, and sought economic damages “because Dr. 
Bracamontes performed cardiac surgery when he was not 
qualified as represented, and the Defendants failed to provide the promised 
quality of medical services.” “Health care liability claim” does not include 
claims unrelated to a departure from accepted standards of medical care, health 
care, or safety.[20] But as the plaintiffs’ advertising claims 
specifically related to whether Dr. Bracamontes was 
“qualified as represented” and attacked the “quality of medical services” they 
received, they were inseparable from a health care claim regarding the standards 
of hospital care.[21] 
            
A person cannot avoid the statutory expert-report requirements by artful 
pleading.[22] As all the acts and omissions the 
plaintiff alleged against the hospital concerned its credentialing decision, 
they are governed by our conclusion above that their reports were inadequate. 

III. No Adequate Remedy by Appeal
            
Whether a clear abuse of discretion can be adequately remedied by appeal 
depends on a careful analysis of costs and benefits of interlocutory review.[23] As this balance depends heavily on 
circumstances, it must be guided by analysis of principles rather than simple 
rules that treat cases as categories.[24]
            
The most frequent use we have made of mandamus relief involves cases in 
which the very act of proceeding to trial — regardless of the outcome — would 
defeat the substantive right involved. Thus we have held appeal is not an 
adequate remedy when it will mean:
$ forcing parties to trial 
in a case they agreed to arbitrate;[25] 
 
$ forcing parties to trial 
on an issue they agreed to submit to appraisers;[26]
 
$ forcing parties to a jury 
trial when they agreed to a bench trial;[27]
 
$ forcing parties to trial 
in a forum other than the one they contractually selected;[28]
 
$ forcing parties to trial 
with an attorney other than the one they properly chose;[29]
 
$ forcing parties to trial 
with an attorney who should be attending the Legislature;[30] and
 
$ forcing parties to trial 
with no chance for one party to prepare a defense.[31] 
 
            
In each of these cases, it was argued that no harm would come from the 
trial — perhaps the case would settle, and perhaps fee and interest awards could 
remedy the expense and delay of trying the case twice. But in each case we 
granted mandamus relief. Some fee and interest reimbursements are uncollectible, 
and some sunk costs (such as time taken from other work) are unrecoverable 
regardless. Further, a legal rule that no harm could possibly accrue to anyone 
so long as the attorneys get paid to try the case twice appears at least a 
little self-interested. 
            
Of course, mandamus is generally unavailable when a trial court denies 
summary judgment, no matter how meritorious the motion. But parties are not 
“entitled” to summary judgment in the same way they are entitled to arbitration, 
their chosen attorney, or an expert report like those here. Summary judgments 
were unknown at common law,[32] and appeared in Texas cases only with 
adoption of the rule in 1949.[33] Even if the merits could be decided only 
one way, jury trials may still be important both for justice and the appearance 
of doing justice. Moreover, trying a case in which summary judgment would have 
been appropriate does not mean the case will have to be tried twice — as it will 
if the first trial is conducted in the wrong time, place, or manner. By 
contrast, insisting on a wasted trial simply so that it can be reversed and 
tried all over again creates the appearance not that the courts are doing 
justice, but that they don’t know what they are doing. Sitting on our hands 
while unnecessary costs mount up contributes to public complaints that the civil 
justice system is expensive and outmoded.[34]
            
Here, the Legislature has already balanced most of the relevant costs and 
benefits for us. After extensive study, research, and hearings, the Legislature 
found that the cost of conducting plenary trials of claims as to which no 
supporting expert could be found was affecting the availability and 
affordability of health care — driving physicians from Texas and patients from 
medical care they need.[35] Given our role among the coordinate 
branches of Texas government, we are in no position to 
contradict this statutory finding. If (as appears to be the case here) some 
trial courts are either confused by or simply opposed to the Legislature’s 
requirement for early expert reports, denying mandamus review would defeat 
everything the Legislature was trying to accomplish.[36]
            
The plaintiffs point out that when the Legislature mandated interlocutory 
review of expert reports in 2003, it did not make those procedures 
retroactive.[37] But the Legislature’s decision to forego 
interlocutory review of all pending cases in no way suggests it intended 
interlocutory review of none of them. Some appellate courts had already 
begun reviewing such cases by mandamus before 2003,[38] and retroactive application might have 
raised constitutional challenges to the statute that prospective application did 
not.[39] Moreover, for cases about to go to trial 
in 2003, mandating interlocutory review could have slowed disposition rather 
than expediting it. So we disagree that the Legislature’s provision for 
mandatory review in future cases suggests it intended to prohibit review in 
cases already pending.
            
For many of the same reasons, we acknowledge that mandamus review should 
not be granted in every pre-2003 case. The statute was intended to preclude 
extensive discovery and prolonged litigation in frivolous cases; review by 
mandamus may actually defeat those goals if discovery is complete, trial is 
imminent, or the existing expert reports show a case is not frivolous. But if 
the legislative purposes behind the statute are still attainable through 
mandamus review, Texas courts should not frustrate those 
purposes by a too-strict application of our own procedural devices.
            
Applying those principles here, we hold that appeal would not be an 
adequate remedy in this case. This appears to be precisely the kind of case the 
Legislature had in mind when it enacted the expert report requirements. The 224 
patients initially involved in this consolidated suit had nothing in common 
other than their doctor. The plaintiffs assert no precedent for consolidating 
hundreds of malpractice claims by different patients with different health 
problems and different courses of treatment; their only explanation is that they 
wanted to save money on filing fees. The hospital promptly objected to the 
plaintiffs’ expert reports, but the trial judge refused to rule on the objection 
for four years, even though the hospital repeatedly reminded the judge and asked 
for a ruling in the interim. Meanwhile, the hospital’s attorneys had to attend 
numerous docket calls and status conferences, and moved for summary judgment 
against 200 plaintiffs whose claims were barred by limitations — motions the 
trial court granted, but which the hospital should never have had to file. 
Unquestionably, the hospital could have avoided significant expense and delay 
had the trial court followed the law as set out in the statute; unquestionably, 
the hospital will continue to incur costs and delay in the future if we deny 
relief today. Accordingly, we hold the hospital has shown it has no adequate 
remedy by appeal.
            
This holding is not (as the dissent argues) a sudden departure from 
Walker v. Packer.[40] That case was not “seminal” as it 
represented not the seed of Texas mandamus jurisprudence (which stretches 
back almost two centuries)[41] but an effort in 1992 to prune some of its 
branches.[42] The seminal case was actually Bradley 
v. McCrabb, issued while Texas was still a 
republic, which held that mandamus was not limited to cases where there was “no 
other legal operative remedy,” but would issue when “other modes of redress are 
inadequate or tedious” or when mandamus affords “a more complete and effectual 
remedy.”[43] 
            
We mentioned this “more lenient standard” in Walker, but found 
it unworkable as it “would justify mandamus review whenever an appeal would 
arguably involve more cost or delay than mandamus.”[44] But while rejecting a standard allowing 
mandamus almost always, we did not adopt a standard allowing it almost never. To 
the contrary, we said there would be “many situations” in which mandamus would 
be appropriate:
Nor are we 
impressed with the dissenters’ claim that strict adherence to traditional 
mandamus standards will signal an end to effective interlocutory review for some 
parties or classes of litigants. There are many situations where a party will 
not have an adequate appellate remedy from a clearly erroneous ruling, and 
appellate courts will continue to issue the extraordinary writ.[45] 
 
In describing 
when an appeal would be “inadequate,” we listed several situations “[i]n the discovery context alone” that “come to mind”:
$ when disclosure of privileged information or trade secrets 
would “materially affect the rights of the aggrieved party”; 
 
$ when discovery “imposes a burden on the producing party far 
out of proportion to any benefit that may obtain to the requesting party”;
 
$ when a “party’s ability to present a viable claim or defense 
at trial is vitiated or severely compromised by the trial court’s discovery 
error”; and
 
$ when “the missing discovery cannot be made part of the 
appellate record . . . and the reviewing court is unable to evaluate the effect 
of the trial court’s error.”[46]
 
            
By mentioning these instances only as ones that “come to mind,”[47] the Court clearly did not limit mandamus 
to them. And almost immediately after Walker we began recognizing additional 
instances in which an appeal would be inadequate, including: 
$ when a trial court refused to compel arbitration;[48]
 
$ when an appellate court denied an extension of time to file 
an appellate record;[49]
 
$ when a trial court refused to compel discovery until 30 days 
before trial;[50]
 
$ when a trial court denied a special appearance in a mass tort 
case;[51] and
 
$ when a trial court imposed a monetary penalty on a party’s 
prospective exercise of its legal rights.[52]
 
            
The problem with defining “inadequate” appeals as each situation “comes 
to mind” was that it was hard to tell when mandamus was proper until this Court 
said so. So almost four years ago we tried to describe the public and private 
interest factors that courts should balance in deciding whether the benefits of 
mandamus outweighed the detriments in each particular case.[53] There is no reason this analysis should 
entangle appellate courts in incidental trial court rulings any more than 
Walker’s 
ad hoc categorical approach. For example, some privileged or confidential 
matters may be so innocuous or incidental that the burden of reviewing an order 
to produce them outweighs the benefits of such a review; in such cases, a 
balancing approach would prevent entanglement while Walker’s 
categorical approach might require it. The balancing analysis we have followed 
for some years now merely recognizes that the adequacy of an appeal depends on 
the facts involved in each case.
            
The facts in this case do not involve delay and expense alone, as the 
dissent alleges. The Legislature determined that cases like this one were 
rendering health care unavailable or unaffordable in areas of Texas like the one where 
this case was filed. The Legislature’s insistence that plaintiffs produce 
adequate expert reports is almost as old as this Court’s attempt in Walker to define 
adequate appeals.[54] We disagree with the dissent that this 
Court’s priorities should trump those adopted by the people through their 
legislative representatives. 
IV. Dismissal or Amendment?
            
Finally, the plaintiffs argue that if mandamus relief is granted, they 
are still entitled to seek an additional 30-day “grace period” from the trial 
court to amend their expert reports. Under the facts and statute at issue here, 
that option is not available.
            
Unlike the current statute, the statute applicable before 2003 allowed a 
grace period to correct inadequate reports only if the inadequacy was the result 
of an accident or mistake:
Notwithstanding any other 
provision of this section, if a claimant has failed to comply with a deadline 
established by Subsection (d) of this section and after hearing the court finds 
that the failure of the claimant or the claimant’s attorney was not intentional 
or the result of conscious indifference but was the result of an accident or 
mistake, the court shall grant a grace period of 30 days to permit the claimant 
to comply with that subsection.[55]
 
            
In a motion filed the morning of the hearing on their reports, the 
plaintiffs requested such an extension for two reasons. First, they sought an 
additional 30 days to get the medical records of 11 plaintiffs, none of whom 
remain in the case. And as negligent credentialing caused harm to the plaintiffs 
only if Dr. Bracamontes’s privileges should have been 
revoked before they were treated, their own medical records could not 
establish that claim.
            
Second, the plaintiffs alleged that any inadequacies in their reports 
were the result of accident or mistake rather than conscious indifference. In 
Walker v. Gutierrez, we held that a report that completely omitted one of 
the elements required by statute could not be an accident or mistake because “a 
party who files suit on claims subject to article 4590i is charged with 
knowledge of the statute and its requirements.”[56] Here, the plaintiffs’ attorneys are 
charged with knowledge that they needed an expert in hospital credentialing, and 
with the qualifications (or lack thereof) of Dr. Brown. Her curriculum vitae 
showed she was a solo family practitioner, and revealed neither experience in 
hospital administration nor even staff privileges at any hospital. At the 
hearing on the hospital’s motion to dismiss, the trial court admitted deposition 
testimony by Dr. Brown that she had not had staff privileges at any hospital for 
several years. On this record, the trial court would have no discretion to 
conclude that the plaintiffs thought Dr. Brown was qualified due to an accident 
or mistake.
* 
* *
            
Because the trial court abused its discretion in failing to grant the 
hospital’s motion to dismiss, we conditionally grant the writ of mandamus and 
order the trial court to vacate its order and enter a new order dismissing the 
plaintiffs’ claims against the hospital. We are confident the trial court will 
comply, and our writ will issue only if it does not. 
 
 
                                                            
            
___________________________________
                                                                        
Scott Brister
                                                                        
Justice
 
OPINION 
DELIVERED: May 16, 2008

 






[1] 
See, e.g., In re Ford Motor Co., 165 S.W.3d 315, 322 (Tex. 2005) (holding mandamus available to protect 
legislative continuance); In re Entergy Corp., 142 S.W.3d 316, 321 
(Tex. 2004) 
(holding mandamus available to protect exclusive jurisdiction of executive 
agency and prevent disruption of “orderly processes of government”).

[2] 
Tex. Rev. Civ. Stat. 
art. 4590i, § 1.02 (repealed 2003).

[3] 
See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 
S.W.3d 873, 877 (Tex. 2001). 

[4] 
Bowles v. Bourdon, 219 S.W.2d 779, 782 (Tex. 1949) (“It is definitely 
settled with us that a patient has no cause of action against his doctor for 
malpractice, either in diagnosis or recognized treatment, unless he proves by a 
doctor of the same school of practice as the defendant: (1) that the diagnosis 
or treatment complained of was such as to constitute negligence and (2) that it 
was a proximate cause of the patient’s injuries.”).

[5] 
In re Methodist Healthcare Sys. of San Antonio, Ltd., No. 04-05-00304-CV, 
2005 WL 1225376, at *1 (Tex. App.—San Antonio May 25, 2005, orig. proceeding 
[mand. pending]) (not designated for publication); 
In re Schnieder, 134 S.W.3d 866, 869 (Tex. 
App.—Houston [14th Dist.] 2004, orig. proceeding); In re Esparza, No. 
13-04-054-CV, 2004 WL 435241, at *1 (Tex. App.—Corpus Christi March 10, 2004, 
orig. proceeding). 

[6] 
In re Clinica Santa Maria, No. 13-06-00256-CV, 
2007 WL 677736, at *1 n.2 (Tex. App.—Corpus Christi March 6, 2007, orig. 
proceeding [mand. pending]) (refusing mandamus relief 
but stating that availability of mandamus relief must be made on a case-by-case 
basis pending a definitive ruling from this Court); In re Samonte, 163 S.W.3d 229, 238 (Tex. App.—El Paso 2005, 
orig. proceeding); In re Watumull, 127 S.W.3d 
351, 354–55 (Tex. App.—Dallas 2004, orig. proceeding); In re Tenet Hosps. Ltd., 116 S.W.3d 821, 827 (Tex. App.—El Paso 
2003, orig. proceeding); In re Rodriguez, 99 S.W.3d 825, 828 (Tex. 
App.—Amarillo 2003, orig. proceeding), mand. 
denied, In re Woman’s Hosp. of Tex., Inc., 141 S.W.3d 144, 149 (Tex. 
2004) (refusing mandamus relief but stating “a remedy by direct appeal was 
inadequate and mandamus would be available in a proper case.”); In re 
Morris, 93 S.W.3d 388, 390 (Tex. App.—Amarillo 2002, orig. proceeding) 
(refusing mandamus relief but stating “because the statute expressed a specific 
purpose of addressing frivolous claims filed against medical practitioners by 
requiring dismissal if a proper expert report was not filed, a remedy by direct 
appeal was inadequate and mandamus would be available in a proper case.”); In 
re Collom & Carney Clinic Ass’n, 62 S.W.3d 924, 928–30 (Tex. App.—Texarkana 2001, 
orig. proceeding).

[7] 
See McAllen Med. Ctr., Inc. v. Cortez, 
66 S.W.3d 227 (Tex. 2001).

[8] 
The plaintiffs here also sued Dr. Lester Dyke, Dr. Hector Urrutia, and Cardiovascular Consultants of McAllen, none of 
whom are involved in this proceeding.

[9] 
In re McAllen Med. Ctr., Inc., No. 
13-05-441-CV, 2005 WL 2456602 (Tex. App.—Corpus Christi Oct. 5, 2005, orig. 
proceeding).

[10] In re Prudential Ins. Co. of Am., 
148 S.W.3d 124, 135–36 (Tex. 2004) (citing 
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)). 

[11] Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 544–46 (Tex. 
2004).

[12] See Tex. Rev. Civ. Stat. art. 4590i, § 13.01(r)(5)(B) 
(“‘Expert’ means . . . with respect to a person giving opinion testimony about a 
nonphysician health care provider, an expert who has 
knowledge of accepted standards of care for the diagnosis, care, or treatment of 
the illness, injury, or condition involved in the claim.”) (repealed 2003) (current version at 
Tex. Civ. Prac. & Rem. Code § 
74.351(r)(5)(B)); Tex. R. Evid. 702 (“If scientific, 
technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a 
fact in issue, a witness qualified as an expert by knowledge, skill, experience, 
training, or education may testify thereto in the form of an opinion or 
otherwise.”).

[13] See Am. Transitional Care Ctrs. of Tex., Inc. v. 
Palacios, 46 S.W.3d 873, 880 (Tex. 2001). 

[14] Bowie Mem’l 
Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002) (“We cannot infer from this 
statement, as the Wrights ask us to, that Bowie’s alleged breach precluded 
Barbara from obtaining a quicker diagnosis and treatment for her foot. Rather, 
the report must include the required information within its four 
corners.”).

[15] Garland Cmty. Hosp., 156 S.W.3d at 
546.

[16] Broders 
v. Heise, 924 S.W.2d 148, 152 (Tex. 1996).

[17] Am. Transitional Care Ctrs., 46 S.W.3d at 
880.

[18] St. 
Joseph Hosp. v. Wolff, 94 S.W.3d 513, 543 (Tex. 2002).

[19] The plaintiffs also say they alleged the 
hospital violated the Texas Deceptive Trade Practices Act, but no such 
allegations appear in their pleadings in the record before us.

[20] Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(4) (“‘Health care liability claim’ means a cause of action 
against a health care provider or physician for treatment, lack of treatment, or 
other claimed departure from accepted standards of medical care, or health care, 
or safety or professional or administrative services directly related to health 
care, which proximately results in injury to or death of a claimant, whether the 
claimant’s claim or cause of action sounds in tort or contract.”) (repealed 2003) (current version at 
Tex. Civ. Prac. & Rem. Code § 
74.001(a)(13); Diversicare Gen. Partner, Inc. v. Rubio, 185 
S.W.3d 842, 849–54 (Tex. 2005); Earle v. 
Ratliff, 998 S.W.2d 882, 885 n.10 (Tex. 1999). 

[21] Diversicare, 185 S.W.3d at 849 (holding claim that 
negligent supervision caused assault was health care liability claim because it 
was “inseparable from the health care and nursing services provided”).

[22] Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 
2004).

[23] In re Prudential Ins. Co. of Am., 
148 S.W.3d 124, 136 (Tex. 2004).

[24] Id. at 137.

[25] In re D. Wilson Constr. Co., 196 S.W.3d 774, 780 (Tex. 2006); Jack B. Anglin 
Co. v. Tipps, 842 S.W.2d 266, 272–73 (Tex. 1992).

[26] In re AllstateCountyMut. 
Ins. Co., 85 S.W.3d 193, 196 
(Tex. 
2002).

[27] In re Prudential, 148 S.W.3d at 
138.

[28] In re AIU Ins. Co., 148 S.W.3d 109, 
115 (Tex. 2004); accord, In re 
Automated Collection Techs., Inc., 156 S.W.3d 557, 558 (Tex. 2004).

[29] In re Cerberus Capital Mgmt., L.P., 
164 S.W.3d 379, 383 (Tex. 2005); In re 
Sanders, 153 S.W.3d 54, 56 (Tex. 2004); 
In re Epic Holdings, Inc., 985 S.W.2d 41, 52 (Tex. 1998); Nat’l Med. 
Enters. v. Godbey, 924 S.W.2d 123, 133 (Tex. 1996).

[30] In re Ford Motor Co., 165 S.W.3d 
315, 322 (Tex. 
2005).

[31] In re Allied Chem. Corp., 227 S.W.3d 
652, 658 (Tex. 
2007).

[32] Tobin v. Garcia, 316 S.W.2d 396, 400 
(Tex. 
1958).

[33] Commentators recognize the 
influence of English and other states’ summary-judgment procedures on Texas’s rules of civil 
procedure:
 
[W]hen the Advisory Committee of the Supreme Court of 
Texas began its labors in 1940 on the Texas Rules of Civil Procedure, there was ample experience to warrant the 
recommendation of a summary judgment rule for the state . . . . During the 
following years there was persuasive advocacy of a rule authorizing summary 
judgment. This was rewarded in the amendments of 1949, which became effective 
March 1, 1950. 
 
Roy W. McDonald, Summary Judgments, 30 Texas L. Rev. 285, 285–86 (1952).
 

[34] See Kent D. Syverud, ADR and the Decline of the American Civil 
Jury, 44 UCLA L. Rev. 1935, 
1935 (1997) (“In America today, the civil jury trial too often resembles the 
expensive and outmoded automobile produced by a flagging state-run industry in a 
once centrally planned economy. Few people buy it unless they have to, although 
there remain die-hard supporters, mostly among the work force on the assembly 
line.”).

[35] Tex. Rev. Civ. Stat. art. 4590i, 
§ 1.02 (repealed 2003).

[36] See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 
(Tex. 2001) (noting that “one purpose of the expert-report requirement is to 
deter frivolous claims” and that “[t]he Legislature has determined that failing 
to timely file an expert report, or filing a report that does not evidence a 
good-faith effort to comply with the definition of an expert report, means that 
the claim is either frivolous, or at best has been brought 
prematurely”).

[37] Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.03, 2003 Tex. Gen. Laws 847, 849 (current 
version at Tex. Civ. Prac. & Rem. 
Code § 51.014(a)(9)–(10)). 

[38] See, e.g., In re Rodriguez, 
99 S.W.3d 825 (Tex. App.—Amarillo 2003, orig. proceeding), mand. denied, In re Woman’s Hosp. of Tex., 
Inc., 141 S.W.3d 144 (Tex. 2004) (denying mandamus relief but stating that 
“a remedy by direct appeal was inadequate and mandamus would be available in a 
proper case”); In re Morris, 93 S.W.3d 388, 390 (Tex. App.—Amarillo 2002, 
orig. proceeding) (denying mandamus relief but stating that “because the statute 
expressed a specific purpose of addressing frivolous claims filed against 
medical practitioners by requiring dismissal if a proper expert report was not 
filed, a remedy by direct appeal was inadequate and mandamus would be available 
in a proper case”); In re Hendrick Med. Ctr., 
Inc., 87 S.W.3d 773, 775 n.3 (Tex. App.—Eastland 2002, orig. 
proceeding) (holding that the trial court did not abuse its discretion in 
granting a 30-day grace period, but noting that “[a]lthough we do not reach the question of whether Relators have an adequate remedy at law, see In re Collom . . . for a discussion of this requirement for a 
writ of mandamus”); In re Collom & Carney 
Clinic Ass’n, 62 S.W.3d 924, 930 (Tex. 
App.—Texarkana 2001, orig. proceeding). 

[39] See, e.g., Subaru of Am., Inc. v. 
David McDavid Nissan, Inc., 84 S.W.3d 212, 219 
(Tex. 2002) 
(noting that a retroactive statute violates Texas Constitution “if, when 
applied, it takes away or impairs vested rights acquired under existing 
law”).

[40] 827 S.W.2d 833 (Tex. 1992).

[41] See generally Richard E. Flint, 
The Evolving Standard for Granting Mandamus Relief in the Texas Supreme 
Court: One More “Mile Marker Down the Road of No Return”, 39 St. Mary’s L.J. 3, 48–94 
(2007).

[42] See Webster’s Third New International Dictionary 
2064 (1981) (defining “seminal” as “derived from . . . seed”). 

[43] Bradley v. McCrabb, Dallam 504, 507 (Tex. 1843); see Flint, supra note 41, at 49–53.

[44] Walker, 827 S.W.2d at 
842.

[45] Id. at 843.

[46] Id.

[47] Id.

[48] Jack B. Anglin 
Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992).

[49] Nat’l Union Fire Ins. Co. of Pittsburgh, 
Pa. v. Ninth Court of Appeals, 864 S.W.2d 58, 61 (Tex. 1993).

[50] Able Supply Co. v. Moye, 898 S.W.2d 766, 772 (Tex. 1995).

[51] CSR Ltd. v. Link, 925 S.W.2d 591, 
596-97 (Tex. 
1996).

[52] In re Ford Motor Co., 988 S.W.2d 
714, 723 (Tex. 
1998).

[53] In re Prudential Ins. Co. of Am., 
148 S.W.3d 124, 136 (Tex. 2004).

[54] See Act of May 5, 1995, 74th Leg., 
R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 
(requiring expert reports); Act of May 25, 1993, 73d Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347, 2347 (requiring 
expert reports or cost bonds).

[55] Tex. Rev. Civ. Stat. art. 4590i, 
§ 13.01(g) (repealed 2003).

[56] 111 S.W.3d 56, 62 (Tex. 
2003).